Marco Molina, SBN 338185
Shaia Stambuk, SBN 329240
**BAKER & HOSTETLER LLP**
600 Anton Boulevard, Suite 900
Costa Mesa, California 92626
Telephone: 714.754.6600
Email: mmolina@bakerlaw.com
       sstambuk@bakerlaw.com

Alexandra Trujillo, Texas Bar No. 24110452
**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002
Telephone: 714.751.1600
Email: atrujillo@bakerlaw.com
*Pro Hac Vice Forthcoming*

*Attorneys for Petitioner*
VALESKA SIGREN BINDHOFF

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE VALESKA SIGREN BINDHOFF, <br><br> Petitioner. | Case No.: 2:24-cv-07388 <br><br> **MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING** |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

# TABLE OF CONTENTS

I.      **FACTUAL BACKGROUND** .................................................................... 1

II.     **ARGUMENT** ........................................................................................ 8

    A.    Petitioner Satisfies the Statutory Requirements of 28 U.S.C. § 1782 ...... 9

    B.    The Court Should Exercise Its Discretion to Grant The Requested Discovery Order .................................................................................. 13

    C.    The Court Should Grant Petitioner's Application *Ex Parte* .................. 17

III.    **CONCLUSION** ................................................................................. 17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

Petitioner Valeska Sigren Bindhoff ("**Petitioner**") respectfully submits this memorandum of law in support of her application for an order, pursuant to 28 U.S.C. § 1782, to conduct discovery for use in a foreign proceeding by serving a subpoena on André Paul Boissier ("**AB**") who resides in this District.

## I. FACTUAL BACKGROUND

### A. PETITIONER'S BACKGROUND AND RELATIONSHIP WITH JEAN-JACQUES BOISSIER.

Petitioner is an 86-year-old Chilean citizen who resides in Santiago, Chile. Declaration of Tomas Leonard ("Leonard Decl."), ¶ 5. Petitioner was married to Jean-Jacques Boissier ("**JJB**") for over 42 years. *Id.* They married on April 10, 1980, and lived between Europe and the United States before taking up residence in Chile in 1992. *Id.* At the time of his death in November 2021, JJB and Petitioner had been living in Santiago, Chile for over 30 years. *Id.* They had no children together. *Id.*

The late JJB was a former banker that was closely affiliated with Banque Lombard Odier & Cie S.A., a private bank located in Geneva, Switzerland ("**Lombard Odier**" or "**Bank**"). Leonard Decl., ¶ 6. JJB had three children from his previous marriage: AB, Natasha Dolores de los Milagros Boissier, and Sergei Boissier, all of Swiss nationality (collectively, the "**Boissier Children**"). *Id.* Petitioner has two children from her previous marriage: Jorge Echenique Sigren and María Isabel Echenique Sigren. *Id.* ¶ 7.

Due to the global health crisis, JJB passed away in Chile on November 8, 2021, leaving behind an estate comprised of assets located in the United States, Chile, France and Switzerland. Leonard Decl., ¶ 8. He disposed of his estate through two separate wills. *Id.* On December 24, 2010, JJB drew up a will in Chile (the "**Chilean Will**"). *Id.* ¶ 9. Under the Chilean Will, Petitioner is entitled to 70% of the estate, and the Boissier Children are entitled to the remaining 30% *per stirpes*. *Id.* ¶ 9. The Chilean Will also designates Petitioner as executrix of the estate. *Id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

1

MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

On June 17, 2019, JJB executed a second will (the "**US Will**"). Leonard Decl., ¶ 10. The US Will reserves the validity of other dispositions *mortis causa* with respect to assets located outside of the United States and governed by Chilean or Swiss law. *See id*. By its own terms, the US Will governs distribution of estate assets located within the United States, while the Chilean Will governs distribution of estate assets located in Chile, France and Switzerland (the law of each of those jurisdictions refers to the law applicable in the jurisdiction where the decedent had his last domicile – here, Chile – as the law governing distribution of the estate). *Id*., ¶¶ 9-10. The US Will appoints AB as its executor, along with his sister and JJB's former advisor in the United States, David Roach ("**Roach**"). *Id*., ¶ 10.

### B.    THE JOINT ACCOUNT AND THE TRUSTS.

JJB's estate (the "**Estate**") in Switzerland includes a fraction of a joint account numbered 11299100, which he held jointly with Petitioner at Lombard Odier (the "**Joint Account**"). Leonard Decl., ¶ 11. Petitioner and JJB jointly held the Joint Account for the purpose of receiving distributions from two separate trusts, the Valbois Trust and the Debois Trust (jointly, the "**Trusts**"). *Id*., ¶ 12. JJB set up these Trusts in 1998 and 2010, respectively, for his and Petitioner's collective benefit in equal 50% shares. *Id.* Income from the Trusts was paid into the Joint Account quarterly. *Id.*

At the time of JJB's passing, half of the proceeds in the Joint Account belonged to Petitioner individually, with the remaining balance becoming part of the Estate. Leonard Decl., ¶ 14. By contrast, after JJB's death, Petitioner became the sole beneficiary of the Trusts, so all income distributed by the Trusts should have been paid to Petitioner alone. *Id*., ¶ 13.

### C.    THE SWISS PROCEEDINGS.

#### 1.    *Petitioner Is Forced To File A Declaratory Action Against Lombard Odier, Demanding That The Bank Transfer Her Assets In The Joint Account To A Personal Account*

On numerous occasions since her husband's death, Petitioner has requested that Lombard Odier transfer her one-half share of the Joint Account to her personal account. But Lombard Odier refuses to comply. Leonard Decl., ¶ 15. Petitioner has therefore been forced to file a declaratory action against the Bank for a mandatory transfer order.

Specifically, on November 14, 2022, Petitioner instructed Lombard Odier to transfer to her personal account 50% of the assets deposited in the Joint Account. *Id.*, ¶ 16. Petitioner's instruction was addressed to Marc Genet, senior officer at Lombard Odier and relationship manager for the Joint Account. *Id.* She submitted this demand pursuant to section 2 of the contract for the Joint Account, which provides in relevant part that each holder of the Joint Account "has the right to carry out all operations relating thereto," including all "acts of management, administration and disposition." *Id.* (citing Exhibit 16).

In a letter dated November 18, 2022, Lombard Odier indicated that it would not execute Petitioner's instruction. Leonard Decl., ¶ 17 (citing Exhibit 6). Although Lombard Odier acknowledged that the Joint Account had been opened in the name of Petitioner and her late husband, the Bank asserted that the Boissier Children took on JJB's one-half of the account and that anything beyond "day-to-day operations" that may "contravene with the Estate's interests" could not be done without "agreement of all the heirs and of the surviving co-holder [Petitioner]." *Id.*

In response, on December 2, 2022, Petitioner gave Lombard Odier formal notice to immediately transfer to her personal account half the assets in the Joint Account, plus interest at 5% per annum on the value of the Joint Account as of November 29, 2022. *Id.*, ¶ 18. Based on advice from legal counsel, Petitioner explained that the "Bank's position is contrary to the express wording of the []

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

contract and of the applicable [Terms & Conditions]." *Id.* (citing Exhibit 7). Petitioner's demand letter was met with silence and Lombard Odier simply refused to act upon Petitioner's instructions. *Id.*, ¶ 19.

On December 6, 2022, Petitioner instituted formal civil proceedings against Lombard Odier by filing a Conciliation Request before the Court of First Instance for the Republic and the Canton of Geneva (the "**Swiss Transfer Action**"), seeking an order instructing Lombard Odier to comply with Petitioner's instructions and transfer half the assets in the Joint Account into her personal account. *See id.*, ¶ 20.

A conciliation hearing took place on January 23, 2023 between Petition and officers at Lombard Odier. *Id.*, ¶ 21. Because the parties failed to reach an agreement, the court authorized Petitioner to proceed with a formal complaint. *Id.*

On May 8, 2023, Petitioner filed her complaint against Lombard Odier seeking relief of specific performance, *i.e.*, that Lombard Odier transfer her one-half interest in the Joint Account to her personal account. *Id.*, ¶ 22. Specifically:

Mainly:

II.    Order Banque Lombard Odier & Cie SA to transfer to Mrs Valeska Sigren Bindhoff (Boissier) half of the assets of joint account No. 112991 00, i.e. half of the liquidities (cash), half of the shares (equities), half of the derivatives and half of the raw materials (gold and other commodities), with interest at 5% per annum (on the value of the joint account as of December 6, 2022), on account No. 112990 00, including Mrs. Valeska Sigren Bindhoff (Boissier) is a holder at Banque Lombard Odier & Cie SA.

*Id.* (citing Exhibit 17).

On November 6, 2023, Lombard Odier finally filed its response to Petitioner's complaint, requesting *inter alia* that the Boissier Children join that separate proceeding as intervenors. *Id.*, ¶ 24.

On January 11, 2024, the Court of First Instance issued an order accepting Lombard Odier's and the Boissier Children's parallel request to join the case as intervenors. *Id.*, ¶ 25. But the Swiss court instructed that intervenors do not become

Baker & Hostetler llp
Attorneys at Law
Costa Mesa, CA

4

parties to the proceedings; specifically, the Court stated that the Boissier Children "may carry out any procedural acts in support of the principal party [here, Lombard Odier], provided they are permitted at the relevant stage of the proceedings" (*i.e.*, their procedural rights are attached to those of Lombard Odier). *Id.* So any procedural act of the Boissier Children "shall not be taken into consideration in the proceedings if they are contradictory to those of the principal party [here, Lombard Odier]." *Id.* (citing Exhibit 8). For practical purposes, the Boissier Children's joinder in the proceeding is limited in scope to supporting Lombard Odier in resisting Petitioner's attempt to recover what rightfully belongs to her. *See id.*

**2.**     ***The Boissier Children Bring A Separate Action To Take Control Of The Entire Joint Account, But The Swiss Court Rejects Their Attempt And Orders That Half Of The Joint Account Clearly Belongs To Petitioner***

Shortly after Petitioner initiated her Swiss Transfer Action against Lombard Odier, on December 22, 2022, AB and his co-executors in the United States demanded that Petitioner surrender **the entirety** of the Joint Account (*i.e.*, including Petitioner's one-half personal share thereof) to AB's custody in the United States for administration under the US Will and ultimately to pass to the Boissier Children. Leonard Decl., ¶ 27. Petitioner declined. *Id.*, ¶ 27.

Approximately one month later, on January 25, 2023, the Boissier Children and Roach filed a claim for injunctive relief against Petitioner before the Court of First Instance for the Canton of Geneva seeking to block the Joint Account and prohibit Petitioner from disposing or transferring any portion thereof. *Id.*, ¶ 28.

On September 26, 2023, the Swiss Court dismissed the Boissier Children's petition as devoid of legal merit, a disguised sequestration, and ordered AB and his co-applicants to pay costs to Petitioner (the "**Dismissal**"). *Id.*, ¶ 29. The Boissier Children appealed. *Id.*

On March 6, 2024, the reviewing Civil Chamber of the Court of Justice for the Canton of Geneva affirmed the Dismissal, instructing that (i) half of the Joint

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

Account rightfully belongs to Petitioner, and (ii) the US Will does not apply to assets located in Switzerland, of which the Joint Account forms part (the "**Swiss Court Order**"). Leonard Decl., ¶ 30. "[T]he Court of First Instance was right to hold that the conditions for ordering provisional measure to freeze the joint account had not been met and that the appellants' claims should be dismissed." *Id.* (citing Exhibit 4).

### 3. *Lombard Odier Refuses To Abide By With The Swiss Court Order And Release The Funds*

After the Swiss Court Order was issued, Petitioner reached out to Lombard Odier through counsel on March 28, 2024, and again on April 10, 2024, seeking release of her one-half interest in the Joint Account. Leonard Decl., ¶ 31. Lombard Odier at first seemed willing to comply with the Swiss Court Order. *Id.*, ¶ 32. The Bank officials advised that they only needed to confirm the authenticity of the Swiss Court Order and notify AB regarding the transfer request. *See id*. But just hours after talking with AB, Lombard Odier then came back to Petitioner and refused to transfer her assets and declined to share the reasons behind their conduct. *Id.* It is Petitioner's informed belief that such blatant disregard of the Swiss Court Order is the product of AB's influence, considering he has a longstanding relationship with high-ranking officials at the Lombard Odier by virtue of his late father. *Id.*, ¶ 33.

### D. PETITIONER'S CONTEMPLATED SWISS PROCEEDING FOR DAMAGES.

Petitioner is contemplating a new, second action against Lombard Odier in order to recover damages due to its contractual failures and gross account mismanagement. Leonard Decl., ¶ 15. She has retained the services of Swiss counsel for this matter. *Id.*, ¶ 34. Swiss counsel has started preparing a civil pleading against Lombard Odier, which will consist of two claims: (i) claims for monetary damages arising from Lombard Odier's intentional failure to transfer Petitioner's portions of the Joint Account, as well as (ii) claims for restitution and monetary damages arising from Lombard Odier's unlawful misappropriation of approximately $530,000 in income distributions the Trustees made following JJB's death (the "**Valbois and**

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

**Debois Distributions**"). *Id.*, ¶ 36. Both claims are premised on the Swiss Code of Obligations, as well as the presumption that, as a financial institution, Lombard Odier owes Petitioner a fiduciary duty of loyalty and a responsibility to safeguard her interests and accounts. *See id.*

As for the first claim: under Article 150 of the Swiss Code of Obligations and Swiss case law, a joint account is generally governed by the principle of joint and several liability. Leonard Decl., ¶ 39. Paragraph 3 of Article 150 specifically provides that a "debtor may choose which joint and several creditor he makes payment to, provided none of them has initiated legal proceedings against him." *Id.* (citing Exhibit 20). In the context of a joint account, Swiss courts have interpreted this paragraph to mean that when a joint account holder initiates a legal action (like the Swiss Transfer Action), a bank ***must*** execute a transfer order, without delay, for the benefit of that first-filed party. *Id.* (citing Exhibit 15). For the reasons stated, Lombard Odier failed to do so here.

If a bank fails to execute a transfer order or otherwise improperly manages a customer's assets, whether intentionally or by negligence, then the bank is liable for the damages caused to the customer per Article 398 of the Swiss Code of Obligations. *Id.*, ¶ 40 (citing Exhibit 21). Further, under Article 97 of the Swiss Code of Obligations, in case of non-execution or defective execution of a contractual obligation, an obligor (here, Lombard Odier) is required to compensate the damages it caused to an obligee (*e.g.*, Petitioner). *Id.* (citing Exhibit 22). Damages under each of these provisions means an involuntary reduction in net assets and can be calculated as (i) a reduction in assets, (ii) an increase in liabilities, or (iii) a loss of profit. *Id.*

Although Petitioner's joint account contract with Lombard Odier contains a limitation of liability provision, that clause can be overcome through a showing of intentional misconduct or gross negligence. *Id.*, ¶ 41.

Second, after JJB's death, the Trustees mistakenly wired the Valbois and Debois Distributions into the Joint Account, even though only the Petitioner was

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

entitled to the Trusts' post-mortem distributions. Leonard Decl., ¶ 42. Throughout 2023, the Petitioner made repeated requests to Lombard Odier to reverse those erroneous Trust distributions or otherwise transfer the funds to Petitioner's personal account. *Id.*, ¶ 43 (citing Exhibit 11). Lombard Odier again refused to comply, requiring an instruction from the Boissier Children. *Id.* The Boissier Children refused to even respond to Petitioner's request for their consent. *Id.*

Importantly, Swiss law permits a party to bring two separate proceedings on a joint account, like Petitioner intends to do here—the first being a request for a transfer, and the second consisting of a claim for damages. *Id.*, ¶ 37. Swiss counsel has undertaken an extensive investigation of the facts and laws related to the Contemplated Swiss Proceeding. *Id.*, ¶ 38.

Petitioner seeks documents and sworn testimony from AB that will shed light on Lombard Odier's illegal conduct and establish that Lombard Odier is intentionally violating its contractual and fiduciary responsibilities to Petitioner. *Id.*, ¶ 44. The requested discovery is also relevant to specifically identify those within Lombard Odier who are responsible for such conduct, to ascertain the scope of damages due to Petitioner, and to overcome any contractual limitation of liability defense that Lombard Odier may raise. *Id.*

## II.    **ARGUMENT**

Section 1782 of Title 28 of the United States Code permits the United States District Courts to grant discovery for use in a foreign proceeding. The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

28 U.S.C. § 1782. The statute's "twin aims" are to provide "efficient assistance to participants in international litigation and encourag[e] foreign countries by example to provide similar assistance to our courts." *United States v. Google LLC, No. 23-MC-80149-PHK*, 2023 WL 5725518, at *5 (N.D. Cal. Sept. 5, 2023) (citing *Intel Corp. v. Advanced Micro Devices Inc.*, 542 U.S. 241, 252 (2004) and *ZF Auto. US, Inc. v. Luxshare, Ltd*., 569 U.S. 619, 632 (2022)). When a court finds that the statutory requirements of 28 U.S.C. § 1782 are met, it may, in its discretion, grant an application for discovery. The United States Supreme Court has articulated a number of factors the district courts should consider when weighing an application under Section 1782 in the seminal *Intel Corp. v. Advanced Micro Devices Inc.* case. 542 U.S. at 264. As discussed in greater detail below, Petitioner satisfies the statutory requirements of 28 U.S.C. § 1782 and all of the discretionary factors set forth in *Intel* weigh in favor of granting Petitioner the requested discovery.

## A. PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Courts are authorized to grant an application made under 28 U.S.C. § 1782 where "(1) the person from whom the discovery is sought 'resides or is found' within the district; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or an 'interested person' in the foreign proceeding." *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019); *see also In re Application of Rainsy*, No. 16-mc-80258-DMR, 2017 WL 528476, at *2 (N.D. Cal. Feb. 9, 2017) (internal citation omitted). Petitioner's application satisfies all three statutory requirements.

### 1. *André Boissier Resides Or Is Found In This District*

First, AB "resides or is found" in this District. 28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925. He resides in this District at 270 18th St., Santa Monica, California 90402. Leonard Decl., ¶ 4. Moreover, Petitioner seeks records from AB's email and cell phone that are personally held and maintained in this District and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

9

MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

should be readily available for production. *See id.*, ¶ 44. Specifically, Petitioner seeks discovery from AB found in this District as follows:

1. Documents between or involving AB and any employee, officer, or director at Lombard Odier, including all emails with the handle "@lombardodier.com," sufficient to show the scope and contents of communications regarding Joint Account, Petitioner, and/or the Valbois and Debois Distributions.

2. Documents between or involving AB and Marc Genet[1] sufficient to show the scope and contents of communications regarding the Joint Account, Petitioner, and/or the Valbois and Debois Distributions.

3. Documents between or involving AB and Emma Lombardini, Carlo Lombardini, or any other member of the law firm Poncet Turrettini Avocats (counsel to Lombard Odier in the Swiss Proceedings) with the email handle "@ptan.ch," sufficient to show the scope and contents of communications regarding the Joint Account, Petitioner, and/or the Valbois and Debois Distributions.

4. Documents between AB and Roach sufficient to show the scope and contents of communications regarding the Joint Account and/or Petitioner's claim to the Joint Account.

5. Documents between AB and his sister, Natasha Boissier, and/or his brother, Sergei Boissier, sufficient to show the scope and contents of communications regarding the Joint Account and/or Petitioner's claim to the Joint Account.

Petitioner further seeks testimony from AB regarding his relationship with the officers, directors and/or employees at Lombard Odier; the nature and extent of his communications with Lombard Odier personnel and Lombard Odier's outside

Baker & Hostetler LLP
Attorneys at Law
Costa Mesa, CA

---

[1] The former – now retired – director at Lombard Odier and account executive for the Joint Account.

10

counsel; and AB's exchanges with his siblings and/or Roach concerning each of the foregoing matters.

A copy of Petitioner's subpoenas to AB, encompassing these categories of documents and request for deposition testimony, are attached to the Application as Exhibits B(1) and B(2).

### 2. *The Discovery Sought Is For Use In A Contemplated Foreign Proceeding*

Second, the discovery sought is for use in a contemplated civil proceeding in Switzerland. In *Intel*, the Supreme Court explained that a foreign proceeding need not be "pending" or even "imminent" when the discovery is sought. 542 U.S. at 258–59. So long as a future proceeding is "within reasonable contemplation," it satisfies the statute's requirement. *Id*. at 259; *see also Khrapunov*, 931 F.3d at 925. Courts in the Ninth Circuit have held this low bar is met where the proceeding "is more than just a twinkle in counsel's eye." *Leutheusser-Schnarrenberger v. Kogan*, No. 18-MC-80171-JSC, 2018 WL 5095133, at *3 (N.D. Cal. Oct. 17, 2018) (internal citation omitted); *In re Ex Parte Application of Ambercroft Trading Ltd.*, No. 18-MC-80074-KAW, 2018 WL 2867744, at *3 (N.D. Cal. June 11, 2018) (accord).

As detailed above, Petitioner has retained Swiss counsel for the express purpose of filing a civil action in Switzerland against Lombard Odier. Leonard Decl., ¶ 34. To date, Petitioner's Swiss counsel has undertaken an extensive investigation of the facts and laws related to the contemplated claims. *See id.*, ¶¶ 34, 38. These actions more than fulfill this Circuit's low threshold for "reasonable contemplation."

Next, to be "for use" in a foreign proceeding, the information sought must be relevant. *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018). "The party issuing the subpoena has the burden of demonstrating the relevance of the information sought" through a *prima facie* showing. *See Digital Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-MC-80150-JSC, 2016 WL 5930275, at *3 (N.D. Cal. Oct.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

12, 2016). Courts in this state interpret this showing to be minimal in nature, since "[r]elevancy, for purposes of discovery, is defined broadly." *Id.*

Here, the Declaration of Tomas Leonard specifies how the documents Petitioner seeks are both relevant and will aid in her Contemplated Swiss Proceeding. Each aforementioned category of documents and associated testimony will shed light on the Lombard Odier's illegal conduct and establish that Lombard Odier is intentionally violating its contractual and fiduciary responsibilities to Petitioner. It will also specifically identify those within Lombard Odier who are responsible for such conduct, assist Petitioner in determining the quantum of damages due and owing to her, and help her overcome any contractual liability roadblock that Lombard Odier may raise. Leonard Decl., ¶ 45.

For example, Petitioner foremost seeks documents and sworn testimony between or involving AB and Lombard Odier's current or former employees, officers, or directors, in order to ascertain the nature of the relationship between AB and Lombard Odier's officials, and reveal the reasons behind the Bank's inexplicable and blatant disregard of the Swiss Court Order and its unlawful misappropriation of the Valbois and Debois Distributions. *Id*., ¶¶ 46, 50 (Request Nos. 1 and 2), 50. If the discovery demonstrates a connection between AB and Lombard Odier's illegal actions, then such discovery would obviously impact the Bank's liability and establish that Lombard Odier is intentionally violating its contractual and fiduciary responsibilities to Petitioner. By contrast, if the discovery demonstrates that no such connection exists, then the absence of any such discovery materials would be relevant to the Bank's defenses.

Similarly, the discovery regarding communications between AB and Lombard Odier's legal counsel (Request No. 3) may demonstrate AB's behind-the-scenes involvement and a shared litigation strategy with the Bank and show Lombard Odier's intentional misconduct or gross negligence, which will again assist in overcoming the gating issue as a result of the limitation of liability provision within

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

12

Petitioner's joint account contract with Lombard Odier. *Id.*, ¶ 47 (Request No. 3). Lombard Odier owes Petitioner a fiduciary duty and is obligated to safeguard her interests and avoid, if at all possible, conflicts of interests that would cause her harm. AB's undisclosed association or joint defense with Lombard Odier would obviously violate this duty. Although the requested materials between AB and Lombard Odier's legal counsel are presumptively not be privileged, if AB does claim privilege, that would also be telling.

Requests 4 and 5 are relevant to and aimed at establishing, through the Bank's direct or indirect communications with the Boissier Children and Roach, Lombard Odier's involvement and responsibility with respect to the foregoing conduct and overall scheme to injure Petitioner. *Id.*, ¶ 48 (Request Nos. 4 and 5).

### 3. *Petitioner Is An Interested Person Under Section 1782*

Third, Petitioner is an "interested person" authorized to bring this application because she is the individual who will be filing the Contemplated Swiss Proceeding. *See Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the interested persons who may invoke § 1782.").

Petitioner thus satisfies each of the three requisite statutory elements necessary to permit this Court to order discovery under 28 U.S.C. § 1782.

### B. THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT THE REQUESTED DISCOVERY ORDER

Once the statutory requirements of 28 U.S.C. § 1782 are met, a district court has broad discretion to grant the application. *See Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002). To guide district courts in the decision to grant a section 1782 application, the Supreme Court has identified several factors that they may consider: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

circumvent foreign proof gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *Intel Corp.*, 542 U.S. at 264-65.

"Although the Court individually analyzes each discretionary factor, they are not stand-alone categorical imperatives but rather involve overlapping considerations, which are considered collectively by the [C]ourt." *In re Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016 WL 6474224, at *4 (N.D. Cal. Nov. 2, 2016) (quoting *In re Action & Prot. Found.*, No. C 14-80076 MISC EMC, 2014 WL 2795832, at *5 N.D. Cal. June 19, 2014) (internal quotation marks and alteration omitted). As such, no one factor is dispositive. *See generally id*.

Here, the factors weigh in favor of granting Petitioner's application.

The first discretionary factor weighs in favor of granting the requested relief. Indeed, AB will not be a party to the Contemplated Swiss Proceeding. Leonard Decl., ¶ 54. Petitioner plans to bring claims in the Contemplated Swiss Proceeding against only Lombard Odier. *Id.*, ¶ 34. Moreover, the Swiss tribunal that will oversee the Contemplated Swiss Proceeding would not be able to compel AP (a third party) to produce any type of discovery. *Id.*, ¶¶ 53-54. As the Supreme Court has explained, this backdrop is exactly the type of backdrop in which a U.S. federal court should grant discovery applications under Section 1782. *Intel Corp.*, 542 U.S. at 264 (finding that Section 1782 discovery was appropriate where "nonparticipants in the foreign proceedings [are] outside the foreign tribunal's jurisdictional reach" making their "evidence, available in the United States, . . . unobtainable absent § 1782(a) aid").

The second factor identified by the Supreme Court—the nature of the foreign proceeding and the receptivity of the foreign tribunal to federal court assistance— also weighs in favor of this Application. This factor "focuses on whether the foreign tribunal is willing to consider the information sought." *In re Will Co.*, No. 21-mc-80211-JCS, 2021 WL 5322653, at *3 (N.D. Cal. Nov. 16, 2021) (quoting *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 14, 2016)). "Where there is no evidence suggesting that foreign courts would be

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

14

unreceptive to the requested discovery, the second discretionary factor weighs in favor of the application." *Id*. (citing *In re Med. Corp. H&S*, No. 19-mc-80107-SVK, 2019 WL 2299953, at *3 (N.D. Cal. May 30, 2019)). This factor weighs in favor of discovery unless the foreign tribunal in question has expressly made it clear that it will not accept the evidence. *See Raiffeinsenbank*, 2016 WL 6474224, at *5 (stating that, under this factor, "courts look for authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782").

Here, there is no evidence that the discovery sought in this application would "offend" Switzerland. Leonard Decl., ¶ 56. Nor is there any indication that the documents sought would be inadmissible in Switzerland. *See id.*, ¶ 57. To the contrary, claimants in civil or criminal proceedings in Switzerland are entitled to introduce evidence obtained from any source, including discovery from the United States. *Id.*

The third factor also suggests that discovery should be granted, as this application is not an attempt to circumvent any foreign proof-gathering restrictions. "A perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013). On the other hand, absence of evidence of attempted circumvention of the foreign tribunal's proof-gathering procedures weighs in favor of an application under § 1782. *See, e.g., In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *2 (N.D. Cal. Dec. 15, 2014); *In re Eurasian Nat. Res. Corp. Ltd.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018); *In re Honda*, No. 21-mc-80167-VKD, 2021 WL 3173210, at *4 (N.D. Cal. July 27, 2021).

The discovery sought in this application does not, to Petitioner or her legal counsel's knowledge, "side-step" or violate any restrictions under Swiss law on evidence gathering. Leonard Decl., ¶ 56. The tribunal in the Swiss Transfer Action

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

1    simply lacks authority to compel this type of discovery from AB, a mere accessory

2    intervenor. *Id.,* ¶¶ 53-54.[2] The tribunal in the Contemplated Swiss Proceeding will

3    likewise not have authority to compel discovery from AB (since he will not be a party

4    to that action). *Id.,* ¶ 55. Moreover, as a practical matter, Petitioner's prior requests

5    in Switzerland and other jurisdictions to parties affiliated with AB for information

6    regarding the Estate generally have been systematically ignored or resisted. *Id.,* ¶ 52.

7    Petitioner and AB have no dialogue, and Petitioner's counsel's efforts to build

8    bridges with AB's counsel in the United States, France and Switzerland have yielded

9    no meaningful results. *See id.* Such experience strongly suggests that, unless

10   Petitioner is able to obtain discovery through this Application, then Petitioner will

11   not be able to gain access to the requested documents. *Id.* Thus, this factor weighs in

12   Petitioner's favor.

13       Finally, this application is not burdensome. The requested discovery is

14   narrowly tailored and drafted in such a manner that the requested information will be

15   easily identifiable to AB. *In re Ex Parte Application of Ambercroft Trading Ltd.*,

16   2018 WL 2867744, at *5. Also, Petitioner only seeks records and documents that

17   would have been created in the last three years, since the passing of JJB in November

18   2021. *See* Ex. B(1), Subpoena, "Relevant Time Period"; *see also Canton v. U.S.*

19   *Foods, Inc*., No. 22CV04226TLTLJC, 2023 WL 4372699, at *5 (N.D. Cal. July 5,

20   2023) (discovery requests were not burdensome dating back to 2010, since the

21   requested documents were relevant and proportionate to the needs of the case); *but*

22   *see In re Ex Parte Application of Qualcomm Inc.,* 162 F. Supp. 3d 1029, 1045 n. 102

23   (N.D. Cal. 2016) (citing case law in support of denying application for overbreadth

24   where applicant sought five to eleven years of activity from an email account without

25   explaining at all why such a wide swath was necessary). AB should have little

26   problem locating and producing these documents and testifying regarding the same.

27

28   [2] Nor would the tribunal in the Swiss Transfer Action compel the discovery requested here, even if
     they could, since it is neither relevant nor admissible in that narrow action. *Id.*, ¶ 53.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

16

## C.    THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE*

The Court should grant Petitioner's application *ex parte*. *Ex parte* applications under this statute are routine and commonplace. *See, e.g.*, *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, Case No. 16-mc-80048-MEJ, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016) (explaining that even though, in general, *ex parte* requests are disfavored, "Section 1782 petitions … have 'regularly [been] reviewed on an *ex parte* basis.'") (internal citations omitted). This is because a respondent's due process rights are not violated when he can later challenge any discovery request by moving to quash pursuant to the Federal Rules of Civil Procedure. *See In re Raiffeinsenbank*, 2016 WL 6474224, at *7; *see also In re Republic of Ecuador*, 2010 WL 3702427, at *5 ("'Such *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'") (internal citation omitted). Accordingly, AB will not be prejudiced by granting Petitioner's application *ex parte* because he will have an opportunity to challenge the discovery Petitioner is seeking once it is served.

## III.    CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court endorse the Proposed Order attached to the *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in A Foreign Proceeding ("Application") as Exhibit A, to serve the subpoenas for production of documents and for deposition testimony, attached to the Application as Exhibits B(1) and B(2), respectively.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

Respectfully submitted,

Dated:  August 29, 2024

**BAKER & HOSTETLER LLP**

By: _____

Marco Molina, SBN 338185
Shaia Stambuk, SBN 329240
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626
Telephone: 714.966.8833
mmolina@bakerlaw.com
sstambuk@bakerlaw.com

Alexandra Trujillo,* Texas Bar
No. 24110452
811 Main Street, Suite 1100
Houston, Texas 77002
Telephone: 713.331.8496
atrujillo@bakerlaw.com
*Pro Hac Vice forthcoming

*Attorneys for Petitioner*
VALESKA SIGREN BINDHOFF

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

## Certificate of Compliance with L.R. 11-6

The undersigned, counsel of record for Petitioner Valeska Sigren Bindhoff ("Petitioner") certifies that Petitioner's Memorandum of Law in Support of Ex Parte Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery For Use in a Foreign Proceeding contains 5,459 words, which complies with the word limit of L.R. 11-6.1.

Dated:  August 29, 2024

**BAKER & HOSTETLER LLP**

By:   /s/

Marco Molina, SBN 338185
Shaia Stambuk, SBN 329240
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626
Telephone: 714.966.8833
mmolina@bakerlaw.com
sstambuk@bakerlaw.com

Alexandra Trujillo,* Texas Bar
No. 24110452
811 Main Street, Suite 1100
Houston, Texas 77002
Telephone: 713.331.8496
atrujillo@bakerlaw.com
*Pro Hac Vice forthcoming

*Attorneys for Petitioner*
VALESKA SIGREN BINDHOFF