1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14

15

16

In re: Ex Parte Application of Valeska Sigren Bindhoff for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings

Case No. 2:24-mc-00105-MEMF-MAA

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

17

18

19

20

21

This Report and Recommendation is submitted to the Honorable Maame Ewusi-Mensah Frimpong, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.[1]

///

22

///

23

24

25

26

27

28

[1] Because a request for discovery pursuant to 28 U.S.C. § 1782 is a dispositive matter, a Magistrate Judge may not decide the matter without the consent of all parties. *See CPC Patient Techs. PTY Ltd. v. Apple, Inc.*, 34 F.4th 801, 807–08 (9th Cir. 2022). In that the undersigned Magistrate Judge does not have the consent of both parties, she lacks authority to issue the binding ruling sought herein. Accordingly, the undersigned prepares this Report and Recommendation for Judge Frimpong.



1    **I.     INTRODUCTION**

2          On December 5, 2022, Applicant Valeska Sigren Bindhoff ("Applicant")

3    filed an ex parte application to take discovery pursuant to 28 U.S.C. § 1782

4    ("Section 1782") for use in a contemplated civil proceeding for restitution and

5    monetary damages in Switzerland ("Contemplated Swiss Proceeding").  (Appl.,

6    ECF No. 1.)  Exhibits B(1) and B(2) of the Application are the document and

7    deposition subpoenas, respectively, Applicant seeks leave to serve ("Proposed

8    Document Subpoena," "Proposed Deposition Subpoena," together "Proposed

9    Subpoenas").  (Prop. Doc. Subpoena, ECF No. 1-2; Prop. Depo. Subpoena, ECF

10   No. 1-3.)  In support of the Application, Applicants filed (1) the Memorandum of

11   Law (Appl. Memo, ECF No. 1-4), and (2) the Declaration of Tomas Leonard

12   (Leonard Decl., ECF No. 1-5) along with its accompanying Exhibits 1 through 25

13   (ECF Nos. 1-6 through 1-30).

14         The Court deems the Application appropriate for resolution without a

15   hearing.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth

16   below, the undersigned recommends that the District Court **GRANT in part** and

17   **DENY in part** the Application and **ORDER** the Proposed Subpoenas served,

18   pursuant to the limitations recommended below.

19

20   **II.    BACKGROUND**

21         **A.     Factual Background[2]**

22         Applicant is an 86-yearold Chilean citizen who resides in Santiago Chile.

23   (Appl. Memo 3.)[3]  Applicant was married to Jean-Jacques Boissier ("JJB") for over

24   forty-two years, living during their marriage between Europe, the United States,

25

26   [2] In summarizing the alleged claims, the Court neither opines on the veracity or merit of the allegations and claims, nor makes any findings of fact.

27   [3] Pinpoint cites citations of page numbers in the Order refer to the page numbers

28   appearing in the ECF-generated headers of cited documents.

and Chile.  (*Id.*)  At the time of his death in November 2021, JJB and Petitioner had been living in Santiago, Chile for over thirty years.  (*Id.*)  Although each had children from prior marriages, they had no children together.  (*Id.*)

The late JJB was a former banker who was closely affiliated with Banque Lombard Odier & Cie S.A., a private bank located in Geneva, Switzerland ("Lombard Odier").  (*Id.*)  JJB had three children from his previous marriage: Andre Paul Boissier ("AB"), Natasha Dolores de los Milagros Boissier, and Sergei Boissier, all of Swiss nationality (collectively "Boissier Children").  (*Id.*)

When JJB passed away, he left behind an estate comprised of assets located in the United States, Chile, France, and Switzerland.  (*Id.*)  He disposed of his estate through two wills:  the first executed in Chile on December 24, 2010 ("Chilean Will") and the second executed in the United States on June 17, 2019 ("U.S. Will"). (*Id.* at 3–4.)  The Chilean Will designates Applicant as executrix of the estate and governs the distribution of estate assets located in Chile, France, and Switzerland. (*Id.*)  The U.S. Will designates AB, his sister, and JJB's former U.S. advisor, David Roach ("Roach") as executors and governs the distribution of estate assets located in the United States.  (*Id.* at 4.)   Collectively, the two wills are referred to as the "JJB Estate."

One of the assets of the JJB Estate is a fraction of a joint account numbered 11299100, which JJB held jointly with Applicant at Lombard Odier ("Joint Account").  (*Id.*)  The Joint Account was used to receive quarterly distributions from two separate trusts—the Valbois Trust and the Debois Trust (collectively, "Trusts")—which JJB set up for his and Petitioner's collective benefit in equal 50% shares.  (*Id.*)  At the time of JJB's passing, half of the proceeds in the Joint Account belonged to Petitioner individually with the remaining balance becoming part of the JJB Estate.  (*Id.*)  After JJB's death, petitioner became the sole beneficiary of the Trusts and all income distributed therefrom should have been paid to Applicant alone.  (*Id.*)

1          Pursuant to the contract for the Joint Account, on numerous occasions since

2     JJB's death, Applicant instructed Lombard Odier—through Mark Genet, a senior

3     officer and relationship manager for the Joint Account—to transfer her one-half

4     share of the Joint Account to her personal account, but Lombard Odier has refused.

5     (*Id.* at 5.)  In response, Applicant instituted civil proceedings against Lombard

6     Odier seeking that Lombard Odier transfer her one-half interest in the Joint

7     Account to her personal account ("Swiss Transfer Action").  (*Id.*)  The Boissier

8     Children intervened in the Swiss Transfer Action.  (*Id.* at 5–6.)  In addition, the

9     Boissier Children filed a petition for injunctive relief against Applicant seeking to

10    block the Joint Account and prohibit Petitioner from disposing or transferring any

11    portion thereof ("Swiss Petition").  (*Id.* at 6.)  The Swiss Petition was dismissed and

12    the dismissal was affirmed by the higher court.  (*Id.*)

13         Undeterred, the Boissier Children, including AB, and Roach, filed a claim for

14    injunctive relief against Applicant under the U.S. Will, seeking to block the Joint

15    Account and prohibit Applicant from disposing or transferring any portion thereof.

16    (*Id.* at 7.)  The Swiss Court dismissed the action as devoid of legal merit and a

17    disguised sequestration.  (*Id.*)  The dismissal was affirmed on appeal, with an

18    instruction that half of the Joint Account belonged to Applicant and that the U.S.

19    Will did not apply to assets located in Switzerland ("Swiss Court Order").  (*Id.* at

20    7–8.)

21         Thereafter, Applicant again sought release of her one-half interest in the Joint

22    Account from Lombard Odier through its counsel, Poncet Turenttini Avocats and

23    Emma Lombardini.  (*Id.* at 7.)  Although Lombard Odier initially seemed willing to

24    comply, it later, and without stated reason, refused to transfer the assets.  (*Id.*)

25    Applicant contends that Lombard Odier's "blatant disregard of the Swiss Court

26    Order [was] the product of AB's influence."  (*Id.*)

27    ///

28    ///

**B.      The Discovery Sought Under 28 U.S.C. § 1782**

As a result of Lombard Odier's alleged disregard of the Swiss Court Order, Applicant is contemplating a new, second action in Switzerland against Lombard Odier alleging contractual failures and gross account mismanagement and has retained Swiss counsel for this matter.  (*Id.*)  She intends to bring claims for (1) monetary damages arising from Lombard Odier's intentional failure to transfer Applicant's portions of the Joint Account, and (2) restitution and monetary damages arising from Lombard Odier's unlawful misappropriation of approximately $530,000 in income distributions from the Trusts.  (*Id.* at 8–10.)

Applicant seeks discovery in the form of documents and sworn testimony from AB related to his communications with persons at Lombard Odier (including Genet), Lombard Odier's legal counsel, AB's siblings Natasha Boissier and Sergei Boissier, and JJB's former advisor Roach, all regarding the Joint Account, Applicant, and the distributions of the Trusts, for the period November 8, 2021 to the present ("Section 1782 Discovery").  (*Id.* at 10.)  Applicant explains that this Section 1782 Discovery will shed light on Lombard Odier's alleged illegal conduct and establish that Lombard Odier's violations of its contractual and fiduciary responsibilities to Applicant are intentional.  (*Id.* at 10.)

The Proposed Document Subpoena seeks the following documents:

1.   Documents between or involving [AB] and any employee, officer, or director at Lombard Odier, including all emails with the handle "@lombardodier.com," sufficient to show the scope and contents of communications regarding Joint Account, [Applicant], and/or the [Trusts'] Distributions;

2.   Documents between or involving [AB] and Marc Genet sufficient to show the scope and contents of communications regarding the Joint Account, [Applicant], and/or the [Trusts'] Distributions;

///

3.  Documents between or involving [AB] and Emma Lombardini, Carlo Lombardini, or any other member of the law firm Poncet Turrettini Avocats with the email handle "@ptan.ch," sufficient to show the scope and contents of communications regarding the Joint Account, [Applicant], and the [Trust's] Distributions;

4.  Documents between [AB] and David L. Roach sufficient to show the scope and contents of communications regarding the Joint Account and/or [Applicant's] claim to the Joint Account; and

5.  Documents between [AB] and [AB's] sister, Natasha Boissier, and/or [AB's] brother, Sergei Boissier, sufficient to [show] the scope and contents of communications regarding the Joint Account and/or [Applicant's] claim to the Joint Account.

(Prop. Doc. Subpoena 8.)  Applicant asserts that this information can be found in the emails and cell phone of AB, both of which are personally held and maintained in this District.  (Appl. Memo 11–12.)

Though not expressly stated in the Proposed Deposition Subpoena, the Applicant seeks the sworn testimony of AB concerning the same subject matters as those stated in the Proposed Document Subpoena.  (*See generally* Prop. Depo. Subpoena; *see also* Appl. 4.)

## III.   LEGAL STANDARD

Section 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any

> interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

The Supreme Court, in *Intel Corp. v. AMD*, 542 U.S. 241 (2004), summarized the statutory requirements for Section 1782 discovery:  (1) the person or entity from whom discovery is sought must reside or be found in the district in which the district court is located; (2) the applicant must be an "interested person" in the foreign proceeding, *id.* at 246; and (3) the discovery must be for use in the foreign tribunal.  *See id.* at 246–47.

Even if the Court has the authority to grant the Application, it is not required to do so.  *Id.* at 247.  A district court has wide discretion to grant discovery under Section 1782.  *Id.* at 265.  In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."  *Id.* at 264–65.  "A district court's discretion is to be exercised in view of the twin aims of § 1782:  providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts."  *In re Roebers*, No. C12-80145 MISC RS (LB), 2012 LEXIS 97008, at *5–6 (N.D. Cal. July 11, 2012).  The party seeking Section 1782 discovery need not establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding.  *See Intel*, 542 U.S. at 247, 261–63.

7

An ex parte application is an acceptable method for seeking Section 1782 discovery.  Indeed, orders granting Section 1782 applications "typically only provide that discovery is 'authorized,' and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*."  *In re Application of Apple Retail UK Ltd.*, No. 20-mc-80109-VKD, 2020 U.S. Dist. LEXIS 119879, at *5 (N.D. Cal. July 8, 2020) (quoting *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 U.S. Dist. LEXIS 38911, at *6 (N.D. Cal. Mar. 24, 2016)); *see also In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that the subpoenaed parties may raise objections and exercise their due process rights by bringing motions to quash the subpoenas).

Unless the court orders otherwise, the authorized discovery must be obtained in accordance with the Federal Rules of Civil Procedure ("Rule").  28 U.S.C. § 1782(a); *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1020 (9th Cir. 1994).

## IV.    DISCUSSION

### A.    Applicant Meets the Statutory Requirements for Discovery.

The District Court should find that the three statutory requirements for Section 1782 discovery—as detailed below—are met in this case.

First, AB is found within this District as he resides in Santa Monica, Los Angeles County, California.  (Leonard Decl., ¶ 4.)  *See* 28 U.S.C. § 84(c)(2) (Los Angeles County is located within the Central District of California).

Second, Applicant qualifies as an "interested person" in that she intends to be the plaintiff in the Contemplated Swiss Proceeding and, indeed, has retained Swiss counsel for this purpose.  (Leonard Decl.*, ¶ 34).  See Intel*, 542 U.S. at 256 ("No ///

8

doubt litigants are included among, and may be the most common example of, the interested persons who may invoke § 1782.")

Third, Applicant seeks discovery for use in the Contemplated Swiss Proceeding.  "[A] foreign proceeding need not be 'pending' or even 'imminent' when the discovery is sought.  *Id.* at 258–59.  Rather, a future proceeding that is "within reasonable contemplation" satisfies the requirements of Section 1782.  *Id.* at 259; *see also Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019).  Here, Applicant has retained Swiss counsel who has undertaken an extensive investigation into the facts and laws related to the contemplated claims.  (Leonard Decl., ¶¶ 34, 38.)  The Court finds that this is sufficient to satisfy the Section 1782 requirement for "foreign proceeding."

A more difficult question is posed with respect to satisfaction of the "for use" requirement of Section 1782.  "A party seeking discovery pursuant to § 1782 must show that the discovery sought is relevant to the claims and defenses in the foreign tribunal, and the court should be 'permissive' in interpreting that standard."  *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018) (internal citation omitted).  "The party issuing the subpoena has the burden of demonstrating the relevance of the information sought."  *Id.* (internal citation omitted).

As an initial matter, the document requests are not a model of clarity and, as a result, could be overbroad.  The requests generally seek documents between or involving AB, on the one hand, and specified persons, on the other, that are "sufficient to show the scope and content of communications" regarding Joint Account, Applicant, Applicant's claim to the Joint Account, and the distributions of the Trusts (collectively, "Communication Subjects").  It is unclear to the Court what Applicant seeks to obtain other than the communications themselves.  As written, however, the requests appear to suggest that AB and the specified persons are passing documents between themselves that are not communications, but that show the scope and content of communications, about the Communication

Subjects.  It also is unclear to the Court what is meant by a document that shows "the scope" of a communication.  This lack of clarity could result in discovery that captures material that is not relevant to the claims or defenses of the Contemplated Swiss Proceeding, in violation of Rule 26(b)(1).  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .")

To the extent the requests seek simply to obtain communications between AB and the specified persons regarding the Communication Subjects, the Court finds some, but not all, of the document requests relevant to the Contemplated Swiss Proceeding.  The Contemplated Swiss Proceeding intends to bring claims against Lombard Odier for its disregard of the Swiss Court Order through (1) its intentional failure to transfer Applicant's portions of the Joint Account to Applicant, and (2) its unlawful misappropriation of income distributions made by the Trusts.  (Appl. Memo 8.)  Applicant explains that the impetus for obtaining the Section 1782 Discovery she seeks from AB is her theory that he, through his personal, long-standing relationship with Lombard Odier, influenced Lombard Odier's alleged misconduct.  (Appl. Memo 8.)  Under this theory, the Court is not convinced that all of the document requests are relevant to the Contemplated Swiss Proceeding.

Requests Nos. 1, 2, and 3 seek communications between AB, on the one hand, and the agents of Lombard Odier—its employees, officers, directors, or counsel[4]—on the other, during the relevant period about the Communication

---

[4]  Applicant identifies Emma Lombardini, Carlo Lombardini, and the Poncet Turretini Avocats law firm as Lombard Odier's counsel in Request No. 3.  (*See* Prop. Doc. Subpoena 8.)  However, the Court finds no reference to Carlo Lombardini in Applicant's papers.  As a result, the Court is unable to determine the relevance of AB's communications with Carlo Lombardini.  To the extent Carlo Lombardini is a member of the Poncet Turretini Avocats firm, his communications would be captured in Request No. 3 as communications of one who is a "member of the law firm . . . ."

Subjects.  (Prop. Doc. Subpoena 8.)  These requests could yield information regarding the relationship between AB and Lombard Odier and the reasons behind the alleged misconduct of Lombard Odier, including AB's influence over Lombard Odier's decisions as a fiduciary to Applicant.  If a relationship is found to exist between AB and Lombard Odier (either directly or through these persons) revealing AB's influence over these matters, as Applicant contends, the discovery could inform Applicant's claims, while the absence of such a relationship could inform Lombard Odier's defenses thereto.  On this basis, the Court finds that Requests Nos. 1, 2, and 3 satisfy the relevance, and hence, the "for use" requirement of Section 1782.

The Court reaches a different conclusion regarding Requests Nos. 4 and 5. Requests Nos. 4 and 5 seek communications between AB, on the one hand, and AB's sister and brother and JJB's U.S. advisor, on the other, during the relevant period regarding the Communication Subjects.  (*See id.*)  Applicant does not explain, and it is not self-evident, how AB's communications with these persons about the Communication Subjects, without more, could inform Applicant's theory that Lombard Odier's unlawful conduct was intentional, as influenced by AB. Unless the communications sought by Requests Nos. 4 and 5 regard or refer to AB's communications with Lombard Odier, what AB and these persons may have said to each other about the Communication Subjects does not inform the question whether Lombard Odier breached its obligations and/or fiduciary duties to Applicant by succumbing to AB's influence.  For example, a simple communication between AB and these persons that they believed Applicant was not entitled to one-half of the Joint Account does not inform the intentionality of Lombard Odier's actions.  On the other hand, a communication between AB and these persons that they believed Applicant was not entitled to one-half of the Joint Account and that they asked AB to communicate this to Lombard Odier, if actually communicated to Lombard Odier by AB, could inform the influence of AB over

Lombard Odier and the intentionality of Lombard Odier's actions.  But such communications between AB and Lombard Odier, regardless of whether they were preceded or followed by communications between AB and these persons, would be captured by Requests Nos. 1 and 2.  The Court is unable to find relevance in communications between AB and these persons regarding matters never communicated by AB to Lombard Odier, or communications between AB and these persons that might shed light on what propelled AB to communicate his thoughts (or the thoughts of his siblings and JJB's U.S. advisor) to Lombard Odier.  On this basis, the Court finds that Requests Nos. 4 and 5 do not satisfy the relevance, and hence, the "for use" requirement of Section 1782.

Having found relevance in the communications sought in Requests Nos. 1, 2, and 3, at least for the preliminary purposes of Section 1782 discovery, the Court remains concerned that, as written, these document requests are difficult to understand and, as such, could be overbroad.  To avoid any misunderstanding that could lead to a discovery dispute, the Court recommends that the District Court order Requests Nos. 1, 2, and 3 re-written, and limit the Deposition Subpoena, as follows:

1. Communications between [AB] and any employee, officer, or director at Lombard Odier, including all emails with the handle "@lombardodier.com" regarding the Joint Account, [Applicant], and/or the [Trusts'] Distributions;

2. Communications between [AB] and Marc Genet regarding the Joint Account, [Applicant], and/or the [Trusts'] Distributions;

3. Communications between [AB] and Emma Lombardini, or any other member of the law firm Poncet Turretini Avocats with the email handle "@ptan.ch," regarding the Joint Account, [Applicant], and/or the [Trusts'] Distributions.

**B.**    **The Discretionary Factors Weigh in Favor of Some, but Not All, the Requested Discovery.**

Next, the District Court should find that the Section 1782 discovery sought here (as limited above) is warranted as a matter of discretion in this case.

### 1.    Participation of Target in the Foreign Proceedings

Under the first *Intel* factor, the Court considers whether the person from whom discovery is sought is a party to the foreign proceeding.  *See Intel*, 542 U.S. at 264.  The Supreme Court explained in *Intel* that:

> when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Id.*

Here, Applicant explains that the Contemplated Swiss Proceeding will be against Lombard Odier only.  (Appl. Memo 16.)  Accordingly, AB will be neither a party in the foreign proceeding nor subject to that tribunal's jurisdiction to order such discovery.  Thus, preliminarily, this factor appears to favor the grant of this discovery.

However, the inquiry is a bit more nuanced.  "[T]he key issue is whether the material is obtainable through the foreign proceeding."  *In re Varian*, 2016 U.S. Dist. LEXIS 38911, at *8 (internal quotation marks and citations omitted) (collecting cases).  Where the information sought can be obtained from a party to the foreign proceeding, the first *Intel* factor weighs against Section 1782 discovery

13

1   even though the subpoena is directed to one not a party to the foreign proceeding.

2   *See In re Application of LG Elecs. Deutschland GMBH*, No. 12cv1197-LAB

3   (MDD), 2012 U.S. Dist. LEXIS 70570, at *4–5 (S.D. Cal.  May 12, 2012) (denying

4   Section 1782 discovery against a non-party of the foreign proceedings upon a

5   finding that the plaintiff in the foreign proceeding was "in possession of that

6   information," and noting that "the Court is permitted, in deciding how to exercise

7   its discretion, to consider whether the applicant has availed itself of discovery

8   procedures in the foreign forum.") (citation omitted)).  As one court explained the

9   analysis of this factor: "it is the foreign tribunal's ability to control the evidence and

10  order production, not the nominal target of the § 1782 application, on which the

11  district court should focus," and the appropriate question is why the parties to the

12  foreign proceeding "are not the appropriate conduits for securing" the documents

13  sought.  *In re Appl. OOO Promnefstroy*, No. M 19-99 (RJS), 2009 U.S. Dist.

14  LEXIS 98610, at *15–18 (S.D.N.Y. Oct. 15, 2009).

15       Thus, the fact that Lombard Odier will be the defendant in the Contemplated

16  Swiss Proceeding weighs against the discovery sought in Request No. 1—

17  communications between AB and Lombard Odier (Prop. Doc. Subpoena 8)—

18  because that information, by definition, likely is in the possession of, and can be

19  obtained from, Lombard Odier, a party to the Contemplated Swiss Proceeding.

20  Should Applicant be unable to obtain the information sought through Request No. 1

21  from Lombard Odier directly during the Contemplated Swiss Proceeding, then

22  Applicant may return to this Court in quest of this relief.  Until then, this request

23  appears premature when considered under the discretionary lens of *Intel*.

24       A different result obtains regarding Requests Nos. 2 and 3, which, as

25  described above, seek information from persons who, like AB, will not be parties in

26  the Contemplated Swiss Proceeding—information that, by definition, is not

27  obtainable from Lombard Odier.  And, according to Applicant's Swiss counsel, the

28  discovery sought here is outside the reach of the Swiss tribunal presiding over the

currently pending Swiss Transfer Action as well as of the Swiss tribunal that will preside over the Contemplated Swiss Proceeding. (Leonard Decl., ¶ 53.) As an intervenor in the Swiss Transfer Action, AB's "procedural rights are restricted to those of Lombard Odier and limited in scope to supporting Lombard Odier's case, *i.e.*, resisting [Applicant's] request for a court order instructing Lombard Odier to return to her 50% of the assets in the Joint Account." (*Id.* at ¶ 54.) Moreover, the discovery sought here would not be compelled in the Swiss Transfer Action because it is "neither relevant nor admissible in that declaratory proceeding." (*Id.* ¶ 54; n. 32.) In addition, as a non-party to the Contemplated Swiss Proceeding, AB would not be subject to that court's authority and, as such, he could not be compelled to produce discovery there. (*Id.* at ¶ 55.)

On this basis, the District Court should conclude that the first *Intel* factor weighs in favor of the Section 1782 Discovery as sought through Requests Nos. 2 and 3, but not Request No. 1.

> 2. <u>Receptivity of the Foreign Tribunal to U.S. Judicial Assistance</u>

Under the second *Intel* factor, the Court considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or the agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "This factor focuses on whether the foreign tribunal is willing to consider the information sought." *In re Varian*, 2016 U.S. Dist. LEXIS 38911, at *11.

Here, Applicant's counsel attests that the Swiss Court will accept evidence obtained through Section 1782 proceedings in the United States. (Leonard Decl., ¶¶ 56–57.) His opinion is based upon the information obtained from Applicant's Swiss counsel that "the discovery sought by [Applicant] here does not violate any restrictions under Swiss law on evidence gathering" and that "a plaintiff in a civil ///

proceeding [in Switzerland] is entitled to introduce evidence obtained from any source, including U.S. discovery."  (*Id.*) [5]

But "district courts have been instructed to tread lightly and heed only clear statements by foreign tribunals."  *In re Ooo Promnefstroy*, 2009 U.S. Dist. LEXIS 98610, at *19–20.  Instead of attempting to glean the accepted practices of other nations, "courts must look for 'authoritative proof that the foreign jurisdiction would reject the § 1782 assistance.'"  *Id.* at 20 (internal citations omitted).  "[I]f there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for the district court to order discovery, especially where it involves substantial costs to the parties involved."  *In re Varian*, 2016 U.S. Dist. LEXIS 38911, at *11 (internal quotation marks and citation omitted); *see also In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040–41 (N.D. Cal. 2016) (concluding that the second *Intel* factor weighed heavily against discovery where the Korea Fair Trade Commission filed an amicus brief stating that it had "no need or use for the requested discovery").  Still, "[i]n the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of [S]ection 1782, courts tend to err on the side of permitting discovery."  *In re Varian*, 2016 U.S. Dist. LEXIS 38911, at *12 (internal quotation marks and citation omitted).)

Here, there is no authoritative proof that the tribunal that will preside over the Contemplated Swiss Proceeding will reject the evidence.  On this basis, the District Court should conclude that the second *Intel* factor weighs in favor of Section 1782 discovery.

---

[5]  Applicant's Swiss counsel also informs the Court that Applicant was able to introduce "a wealth of documentary evidence in her defense against the efforts to block the Joint Account.  (*Id.* at ¶ 57.)  However, this does not assist the Court here because the source of that evidence—whether obtained through Section 1782 discovery or otherwise available through the pending action—is unknown to the Court. (*See id.*)

### 3. Circumvention of Proof-Gathering Restrictions

Under the third *Intel* factor, the Court considers whether a request for Section 1782 discovery "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. "A petitioner seeks to circumvent foreign discovery restrictions when it seeks discovery that cannot be obtained because the foreign jurisdiction prohibits the discovery of those documents." *Illumina Cambridge Ltd.*, No. 19-mc-80215-WHO (TSH), 2020 U.S. Dist. LEXIS 29201, at *14 (N.D. Cal., Feb. 19, 2020) (internal quotation marks and citations omitted). "A perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to Section 1782 can be a factor in a court's analysis." *In re Varian,* 2016 U.S. Dist. LEXIS 38911, at *13 (internal quotation marks and citation omitted). On the other hand, courts have found that this factor weighs in favor of discovery where there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions." *In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 U.S. Dist. LEXIS 173085, at *7 (N.D. Cal., Dec. 15, 2014); *see also In re Eurasian Nat. Res. Corp. Ltd*, No. 18-mc-80041-LB, 2018 U.S. Dist. LEXIS 54857, at *7 (N.D. Cal., Mar. 30, 2018) (finding that the third *Intel* factor weighed in favor of discovery where there was "no evidence" of "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" (internal quotation marks and citation omitted)).

Here, there is no evidence that Applicant seeks to circumvent any proof-gathering restrictions imposed by the Swiss courts or other Swiss policies. Thus, it appears that the sole reason Applicant will be unable to obtain discovery from AB through the Contemplated Swiss Proceeding is that AB resides outside of that court's jurisdiction. On this basis, the District Court should conclude that the third *Intel* factor weighs in favor of Section 1782 discovery.

///

4.     Unduly Intrusive or Burdensome Discovery

Under the fourth *Intel* factor, the Court considers whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.  A district court may deny a Section 1782 request if the court "suspects that the request is a fishing expedition or a vehicle for harassment."  *See In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011).  The party seeking Section 1782 discovery is not required to establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding.  *See Intel*, 542 U.S. at 247, 261–63; *accord In re Roebers*, 2012 U.S. Dist. LEXIS 97008, at *6.  Rather, once it is established that Section 1782 discovery is not being used to circumvent a foreign jurisdiction's discovery restrictions, "the ordinary tools of discovery management, including [Rule] 26, come into play." *Illumina Cambridge Ltd.*, 2020 U.S. Dist. LEXIS 29201, at *21; *see also In re Varian*, 2016 U.S. Dist. LEXIS 38911, at *13–14 ("The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure.").  Under Rule 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  Under Rule 45, the discovery must be designed "to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

Here, Applicant contends that the discovery sought is "narrowly tailored and drafted in such a manner that the requested information will be easily identifiable to AB." (Appl. Memo 18.)  She explains that the Section 1782 Discovery "only seeks records and document that would have been created in the last three years and that "AB should have little problem locating and producing these documents and testifying regarding the same." (*Id.*)  As the Court discusses above, Requests Nos. 1, 2, and 3 are relevant to the Contemplated Swiss Proceeding.  However, the Court

finds that Request No. 1 is burdensome because it can be obtained by a party to the Contemplated Swiss Proceeding.  Requests Nos. 2 and 3, on the other hand, do not appear burdensome or disproportionate to the needs of the Contemplated Swiss Proceeding given their limited timeframe and subject matter.  Finally, to the extent AB—as the person subject to the Proposed Subpoenas—or the persons whose communications with AB are sought—as persons affected by the Proposed Subpoenas—contend that the documentary and testimonial evidence sought is not relevant to the Contemplated Swiss Proceeding or the Proposed Subpoenas are otherwise objectionable, they may oppose the discovery to the extent permitted by the Rules.  On this basis, the District Court should conclude that the fourth *Intel* factor weighs in favor of Section 1782 discovery as to Requests Nos. 2 and 3, but not Request No. 1.

### C.    **CONCLUSION**

In sum, the District Court should conclude that Applicant has satisfied the three statutory requirements of Section 1782 and that all four of the *Intel* factors weigh in favor of granting the Application regarding Requests Nos. 2 and 3 (as recommended re-written), and against granting the Application regarding Requests Nos. 1, 4, and 5.

## V.    **RECOMMENDATION**

Consistent with the foregoing, **IT IS RECOMMENDED** that the District Court issue an **ORDER**:

1.    **ACCEPTING** this Report and Recommendation;

///

///

///

///

2.  **GRANTING in part** and **DENYING in part** the Application as follows:

    a.  **AUTHORIZING** issuance and service of the Proposed Subpoenas as to Requests Nos. 2 and 3 only, which shall be re-written as follows:

> Request No. 2:  Communications between [AB] and Marc Genet regarding the Joint Account, [Applicant], and/or the [Trusts'] Distributions

> Request No. 3:  Communications between [AB] and Emma Lombardini, or any other member of the law firm Poncet Turretini Avocats with the email handle "@ptan.ch," regarding the Joint Account, [Applicant], and/or the [Trusts'] Distributions

(hereinafter, the "Authorized Subpoenas"), without prejudice to AB or any person affected by the Authorized Subpoenas contesting the Authorized Subpoenas to the extent permitted by the Federal Rules of Civil Procedure.  *See In re Letters Rogatory from Tokyo Dist.*, 539 F.2d at 1219 (finding that Section 1782 applications are permitted on an ex parte basis because witnesses may raise objections and assert their due process rights by moving to quash the subpoenas).  In this regard:

    i.  AB or any person affected by the Authorized Subpoenas shall have forty-five (45) calendar days from the date of service of the Authorized Subpoena to file any motions in this Court to contest one or both of the Authorized Subpoenas, which date may be extended by agreement of the parties or order of the Court.

///

20

ii. To allow for such motions, the return date on the Authorized Subpoenas must be set at least forty-six (46) days after the date of its service.

iii. The obligation of AB to respond to a specific Authorized Subpoena is automatically stayed upon the filing of any motion contesting that specific Authorized Subpoena and such stay shall remain in effect until such motion is resolved.

iv. The Court reminds any person contesting the Authorized Subpoena(s) of his or her obligation to comply with Central District of California Local Civil Rule 37 and Judge Audero's discovery dispute resolution process before resorting to motion practice in connection with the Authorized Subpoena(s). *See* C.D. Cal. L.R. 37; http://www.cacd.uscourts.gov/honorable-maria-audero.

b. **PROHIBITING** issuance and service of the Proposed Subpoenas as to Requests Nos. 1, 4, and 5.

c. **ORDERING** Applicants to serve a copy of this Order on AB together with service of the Authorized Subpoena(s).

DATED:  September 10, 2024

_____

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE